UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

IN RE:

BRUNSWICK BAPTIST CHURCH                    Bankr. Case No. 03-13719

                                            Chapter 11

                        Debtor.

_____

CHARLES BORDEN, *et al.*,

                                            Dist. Ct. Case No. 1:05-CV-1085

                        Plaintiffs,         Dist. Ct. Case No. 1:05-CV-1203
                                                           (LEK)

        -against-

BRUNSWICK BAPTIST CHURCH,

                        Defendant.

_____

## <u>MEMORANDUM-DECISION AND ORDER</u>

        This matter comes before the Court on a consolidated appeal, pursuant to 28 U.S.C. §

158(a), from a Memorandum-Decision and Order, dated July 29, 2005, an oral decision, issued on

August 24, 2005, and a Decision and Order, dated August 29, 2005, of the United States Bankruptcy

Court for the Northern District of New York (*Littlefield*, B.J.).

1

I.      **Facts**

The facts and background, relevant to the present motion, are as follows.  Charles Borden,
Diane Borden, Lewis E. McNamee, III, Susan D. McNamee, Rickey Vest, and Thesera Vest
(collectively, "Appellants") are plaintiffs in individual civil actions filed in New York State
Supreme Court, Rennsselaer County against Brunswick Baptist Church ("Debtor"), a not-for-profit
religious organization, between November 7, 2001 and April 24, 2003.  In their individual actions,
Appellants claim that they sustained serious personal injuries on June 20, 2001, while working on
the construction of a new church building on the Debtor's premises.  Debtor filed a voluntary
Chapter 11 petition under Title 11 of the United States Code on May 29, 2003.

Appellants were individually named on the List of Creditors that accompanied Debtor's
Chapter 11 petition, but their counsel were not listed for notice purposes.  The original Notice of
Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines was issued by the United States
Bankruptcy Court Clerk's Office on June 4, 2003, however, it was not served on the creditor body
before the expiration of the deadline for non-governmental creditors to file proofs of claim on
September 29, 2003.  As a result, on November 14, 2003, the Bankruptcy Court issued an Order
fixing the deadline for creditors to file proofs of claim as March 15, 2004 (the "Bar Date Notice").
The Appellants received the Bar Date Notice at their personal residences, but did not forward it to
their counsel, O'Connell and Aronowitz, P.C. ("OA"), in both the action at bar and the state court
actions.

OA did not file a notice of appearance in this case on behalf of the Appellants until June 30,
2004.  However, during the state court litigation, Debtor's counsel did notify OA, both verbally and
in writing, that the Debtor intended to file for Chapter 11 protection.  Appellants did not file general

unsecured proofs of claim in the bankruptcy case until June 9, 2004, nearly three months after the March 15, 2004 deadline to file claims ("bar date"). As a result of Appellants' failure to file proofs of claim, Debtor's plan of reorganization only proposes a voluntary, nominal distribution of $3,000 total to Appellants. In a Memorandum-Decision and Order filed on July 29, 2005, Judge Littlefield denied Appellants' motion seeking to enlarge the period in which to file proofs of claim pursuant to Federal Rules of Bankruptcy Procedure 3003(c)(3) and 9006(b)(1).

Ryan Pratt ("Pratt"), like Appellants, filed a civil action against Debtor in New York State Supreme Court, Columbia County on February 1, 2002 alleging that he sustained serious personal injuries on June 20, 2001, while working for Debtor. Pratt was the only litigant to file a proof of claim, which he filed on August 15, 2003, before the first bar date expired. Debtor reached a settlement agreement with Pratt that called for Debtor's insurance policy[1] to pay him $450,000.00 in exchange for Pratt's release of all rights and claims against Debtor and its insurer related to the June 20, 2001 incident (the "Pratt Settlement"). The Bankruptcy Court determined that the Church Mutual policy was part of the bankruptcy estate and approved the Pratt Settlement on August 29, 2005.

## II. Discussion

Appellants appeal from Judge Littlefield's Order denying their motion to enlarge the period in which to file proofs of claim pursuant to Federal Rules of Bankruptcy Procedure 3003(c)(3) and 9006(b)(1). Additionally, Appellants appeal from Judge Littlefield's Order approving the Pratt

---

[1] Debtor holds a single-occurrence liability policy issued by Church Mutual Insurance Company ("Church Mutual") that provides coverage up to $1,000,000.

Settlement and holding that Appellants did not have standing to raise objections to the settlement. Moreover, Appellants appeal Judge Littlefield's holding that the proceeds of the Church Mutual insurance policy are property of the Debtor's bankruptcy estate and can be used to satisfy the Pratt Settlement.

### A.    Application to Enlarge the Period of Time to file a Proof of Claim

The bankruptcy court's factual findings are accepted unless clearly erroneous and its conclusions of law are reviewed *de novo*.  See In re Arochem Corp., 176 F.3d 610, 620 (2d Cir. 1999).  "Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion."  Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron), 419 F.3d 115, 124 (2d Cir. 2005).  In the court below, Judge Littlefield denied Appellants' application to file late proofs of claim on two grounds: (a) Appellants were given adequate notice of the bar date when they, and not their counsel, received the Bar Date Notice, and (b) Appellants did not demonstrate that their failure to file timely claims was due to excusable neglect.

### 1.    Adequate Notice

In general, due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).[2]

---

[2] "Although Mullane involved the notice due beneficiaries on judicial settlement of accounts by the trustee of a common trust fund, subsequent courts have interpreted the case to set the standard for notice required under the Due Process Clause in Chapter 11 bar date cases."

Judge Littlefield held that several factors confirmed that Appellants were given adequate notice.  First, the court below found that Debtor complied with FED. R. BANKR. P. 1007 and Local Bankruptcy Rule 1007-2, which required the Debtor to file a list of the names and addresses of each "creditor" on a mailing matrix submitted to the court.  See FED. R. BANKR. P. 1007; Local Bankruptcy Rule 1007-2.  Second, Judge Littlefield found no merit in Appellants' argument that New York Disciplinary Rule 7-104 entitled "Communications with Represented and Unrepresented Parties" overrode the language spelling out the addressing of notices in FED. R. BANKR. P. 2002(g)[3] and required service on counsel rather than on the individual creditor.  Judge Littlefield explained that requiring Debtor to list Appellants' counsel for notice purposes would have required Debtor to violate FED. R. BANKR. P. 1007 and Local Bankruptcy Rule 1007-2.  Finally, Judge Littlefield found that even if the Debtor was required to serve Appellants' counsel in the bankruptcy proceeding, "any argument with respect to adequate notice would be immediately stricken since [OA] had actual knowledge of the Debtor's impending bankruptcy filing as early as May 2003, approximately ten months prior to the expiration of the bar date." July 29, 2005 Order (Dkt. No. 1, Attach. 3) at 15.

Appellants urge the Court to follow the rationale set forth in In re The Grand Union Co., 204

---

Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995).

[3] Rule 2002(g) states:

(1) Notices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity security holder shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case. . . .

(2) If a creditor or indenture trustee has not filed a request designating a mailing address under Rule 2002(g)(1), the notices shall be mailed to the address shown on the list of creditors or schedule of liabilities, whichever is filed later. . . .

FED. R. BANKR. P. 2002(g).

B.R. 864 (Bankr. D. Del. 1997) holding that late proof of claim is allowed to be filed when the notice of bar date was delivered to creditors and not to their counsel.  See Apps' Brief (Dkt. No. 10) at 26.  Bankruptcy Judge Walsh found in Grand Union that "mailing the bar date notice to a personal injury claimant whose exclusive representation by counsel is specifically known by the debtor is . . . inadequate" for due process purposes.  See Grand Union 204 B.R. at 872.  In his decision, Judge Littlefield declined to follow the Grand Union decision and cited a line of cases permitting debtors to serve creditors directly, even when creditors' counsel was known.  See  July 29, 2005 Order (Dkt. No. 1, Attach. 3) at 12-14.

Judge Walsh found that the debtor in Grand Union provided inadequate notice to creditors because debtor had specific knowledge that claimants: (1) were represented by counsel and (2) desired that debtor or its agent deal with their claims through the identified counsel.  Grand Union, 204 B.R. at 872. Judge Walsh noted that while debtor had adhered to claimants' requests during the pre-petition period, after the filing of the petition they proceeded to communicate with the claimants and not with the lawyers, including the critical communication of the bar date notice.  Id. at 872 - 73.  Judge Walsh found that it was reasonable to expect three lay-people unfamiliar with commercial bankruptcies not to appreciate the legal significance of the bar date notice and act accordingly - especially after empowering  their counsel to act exclusively on their behalf.  Id.

Grand Union rejected arguments that FED. R. BANKR. P. 2002(g) does not require debtors to communicate directly with claimants' attorneys who had not filed notices of appearance in the case. The court found that the "in a filed request" language in FED. R. BANKR. P. 2002(g) should be broadly construed to require debtors to communicate with attorneys representing personal injury claimants, when the claimants' attorneys have requested that the debtor communicate exclusively

with them in pre-petition written notices.  Id.  Furthermore, Judge Walsh also reasoned that FED. R. BANKR. P. 2002(g) "should be interpreted in accordance with the prevailing ethical standards that require dealings with counsel where an opposing party is known to be represented" and debtors prevented from sending bar date notices to claimants instead of claimants' counsel.  Id. at 877.

This Court agrees with Judge Littlefield, and finds that under the case law and the applicable bankruptcy and local rules Appellants did receive adequate notice of the bar date.  As Judge Littlefield noted, most courts have not interpreted FED. R. BANKR. P. 2002(g) to require debtors to serve creditors' counsel, even in instances when debtors knew counsel represented creditors in pre-petition matters regarding the debt in question.  See In re Solvation, Inc. 48 B.R. 670 (Bankr. D. Mass. 1985) (accounting firm, and not its counsel, timely received a bar date notice and was apprised with adequate notice; the bankruptcy court could not exercise its equitable power and extend the filing date for claims); Dependable Ins. Co. v. Horton (In re Horton), 149 B.R. 49 (Bankr. S.D.N.Y. 1992) (apprised with sufficient notice of the bankruptcy case pursuant to Rule 2002 when debtor, who knew counsel representing the insurance company in an indemnity action, sent notice of the commencement of the case to the insurance company and not to counsel); Midatlantic Nat'l Bank v. Kouterick (In re Kouterick) 161 B.R.755 (Bankr. D.N.J. 1993) (no legal obligation to serve notice on creditors' counsel, who are known by debtor to have represented creditors in pre-petition matters).

In the instant matter, Debtor complied with FED. R. BANKR. P. 1007 and Local Bankruptcy Rule 1007-2 and filed a list of the names and addresses of each "creditor" on a mailing matrix submitted to the court.  As a result, the Clerk's Office sent the Bar Date Notice to Appellants.  OA did not file a notice of appearance on behalf of Appellants in this case until June 30, 2004, over two

months after the deadline for filing proofs of claim.  According to FED. R. BANKR. P. 2002(g),

Debtor is required to send all notices to the Appellants, unless their agent directs otherwise in a

request filed with the Bankruptcy Court.  See FED. R. BANKR. P. 2002(g)(1) and (2).  OA failed to

make such a request, and, therefore, it was not improper for Debtor to send the Bar Date Notice

directly to Appellants.  As a consequence, Appellants did have notice of the bar date and an

opportunity to file timely proofs of claim.  Appellants' failure to forward the Bar Date Notice to OA

should not serve to penalize Debtor, who complied with applicable rules and provided adequate

notice to Appellants.  See, e.g., In re R.H. Macy & Co., Inc., No. 92 B 40477 (BRL), 1993 Bankr.

LEXIS 855 (Bankr. S.D.N.Y. May 12, 1993), rev'd on other grounds, 166 B.R. 799 (S.D.N.Y.

1994) (not improper for debtor to mail notice of claim to elderly personal injury claimant when

counsel failed to file request to direct notices elsewhere).

   In addition, there are significant factual differences between Grand Union and the instant

case.  Most significantly, and unlike in Grand Union, Debtor's counsel did notify OA that the

Debtor intended to file for Chapter 11 protection and provided OA with actual notice of the deadline

for filing proofs of claim.  Debtor's counsel served OA with substantive pleadings, although there

appears to have been some confusion on OA's part when the papers were received, prior to the

expiration of the bar date.  The papers OA received included applications to extend the Exclusivity

Period, which included language that stated, "Though debtor commenced its Chapter 11 case on

May 29, 2003, Notice of the Commencement of the Bankruptcy Case was not issued until

November 2003.  As a result, the deadline for filing proofs of claim was extended to March 15,

2004."  Therefore, regardless of any confusion on the part of Appellants' counsel, Appellants and

their counsel were reasonably apprised of the bar date and their appeal on due process grounds is

denied.

### 2.      Excusable Neglect

Federal Rule of Bankruptcy Procedure 9006(b)(1) allows a bankruptcy court to permit a late filing, including the filing of proofs of claim, if the movant's failure to comply with an earlier deadline "was the result of excusable neglect."  See FED. R. BANKR. P. 9006(b)(1).  The Court must engage in an equitable consideration of all relevant circumstances surrounding Appellant's failure in order to determine whether the failure to file timely proofs of claim was due to excusable neglect. See Weiner v. Passeretti (In re Eeleasco, Inc.), 219 B.R. 649, 652 (N.D.N.Y. 1998) (*Kahn*, D.J.) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 395 (1993)). When determining excusable neglect, the Court must consider: (1) the danger of prejudice to Debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of Appellant; and (4) whether Appellant acted in good faith.  Id.

Judge Littlefield properly applied the Pioneer factors and denied Appellants' Motion to enlarge the time to file proofs of claim based on excusable neglect.  Debtor has not questioned Appellants' good faith in this appeal, and this Court has no reason to assume that Appellants have not acted in good faith.  Nevertheless, as described above, Appellants and OA had adequate notice of the Bar Date, but failed to file their claims until June 9, 2004, nearly three months after the deadline and fifteen (15) months after the commencement of the bankruptcy.  In such circumstances, "[c]ourts generally do not rule in favor of claimants . . . who have neglected to timely file proofs of claim as a result of their failure to communicate with counsel regarding a legal notice."  In re

Agway, Inc., 313 B.R. 31, 40 (Bankr. N.D.N.Y. 2003) (*Gerling*, Chief B.J.).  Accordingly, Appellants were aware of the bar date, yet they delayed making any filing.  Additionally, if Appellants were allowed leave to file their proofs of claim, there can be no doubt that Debtor would be severely prejudiced.  Appellants' attempts to file late proofs of claim have already disrupted and significantly delayed Debtor's reorganization.  Furthermore, as has been conceded by all sides, Appellants' claims are substantial and, if they are permitted to file them, Debtor will be forced to dissolve and close its doors to its members.  Therefore, Judge Littlefield properly found that, on balance, the Pioneer factors weigh against enlarging the time for Appellants to file their proofs of claim.

### B.    Insurance Proceeds Are Part of the Estate

This Court agrees with Judge Littlefield and finds that the proceeds of the Church Mutual insurance policy are property of the Debtor's bankruptcy estate as defined by Bankruptcy Code Section 541(a)(1) and, as a result, the Bankruptcy Court did have jurisdiction to approve the Pratt Settlement.  Because the insurance policy and proceeds are part of the estate, the Court does not need to, and, therefore, does not, decide whether Appellants had standing to challenge the Pratt Settlement as a party in interest under 11 U.S.C. § 1109.

"Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction."  MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 92 (2d Cir. 1988), cert. denied, 488 U.S. 868 (1988).  While insurance policies have been found to be property of the bankruptcy estate, the Court must also determine whether the proceeds from liability insurance policies are also considered property of the estate.  Ochs v. Lipson, 99 CV-

6730 (TCP), 2000 U.S. Dist. LEXIS 22005 (E.D.N.Y. Mar. 2. 2000) (citing In re Louisiana World Exposition, Inc. v. Fed. Ins. Co., 832 F.2d 1391, 1399 (5th Cir. 1987)). Courts have generally found that insurance proceeds are part of the estate, but the Second Circuit has not determined which approach to take for resolving the issue.  Ryan v. Sullivan, Hill, Lewin, Rez, Engel & Labazzo, 316 B.R. 101, 112 (D. Conn. 2004).

Section 541(a)(1) provides that the bankruptcy estate "is comprised of all the following property, wherever located and by whomever held: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2006).  The Supreme Court has held that the scope of this section is broad, and it has been found to be broad enough to cover the debtor's right to have an insurance company pay money to satisfy debts accrued through the debtor's negligent behavior.  Tringali v. Hathaway Mach. Co., 796 F.2d 553, 560 (1st Cir. 1986) (Breyer, J.) (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n.9 (1983)).  Liability insurance may be the debtor's most valuable property when confronted with substantial liability claims within the coverage of the policy.  See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1001-02 (4th Cir. 1985); MacArthur, 837 F.2d at 92 (affirming bankruptcy court's determination that insurance policies and proceeds were debtor's property in asbestos-related bankruptcy case).  The Church Mutual policy is Debtor's only substantial property.  The coverage provided by the Church Mutual policy limits Debtor's exposure to liability and obligates the insurer to pay claims which Debtor might otherwise have to pay - this represents a substantial interest for Debtor within the meaning of Section 541(a)(1).  Moreover, as Judge Littlefield recognized, use of the insurance proceeds is essential for the effective reorganization of the estate.  August 29, 2005 Order (Dkt. No. 1, Attach. 2).  As then-Circuit Judge Breyer explained, failure to include insurance

policy proceeds in the bankruptcy estate:

> . . . could start a race to the courthouse whenever a policy is too small to satisfy several potential plaintiffs. Such a race could mean unfair results as between potential plaintiffs; it could also prevent a bankruptcy court from marshalling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate.

Tringali, 796 F.2d at 560.

Appellants state that the approval of the Pratt Settlement effectively bifurcates the Church Mutual policy's potential $1,000,000.00 in proceeds.  Appellants argue that because the Order implicitly recognizes $450,000.00 of these proceeds as a bankruptcy estate asset, it necessarily means that $550,000.00 is outside the estate - which would allow Appellants to proceed in state court against Debtor in order to collect this residual amount from the Church Mutual policy.  Appellants are concerned that Debtor's Disclosure Statement does not recognize this apparent bifurcation and that they may be barred from pursuing their rights in state court.  However, as Judge Littlefield made clear in his Order, the inclusion of the insurance proceeds in the bankruptcy estate does not foreclose Appellants from pursuing monies remaining in the Church Mutual policy once the Pratt Settlement has been paid.  Judge Littlefield granted Appellants relief from the automatic stay to pursue the balance of the insurance proceeds, which is entirely proper.  See Royal Ins. Co. of Am. v. McCrory Corp., No. 94 Civ. 5734 (SS), 1996 U.S. Dist. LEXIS 5552, at *1 (S.D.N.Y. Apr. 25, 1996) (where a party "sues the debtor only to establish liability against a third part, and where the bankruptcy court is persuaded that allowing the action to go forward will not burden the estate or prejudice other creditors, the plaintiff's failure to file a proof of claim should not, and does not, preclude it from recovering against the debtor's insurer.").  The Court recognizes the unfortunate outcome of this case.

While Appellants are barred from asserting claims against Debtor's bankruptcy estate because of their failure to file timely proofs of claim, this Court emphasizes Judge Littlefield's admonition that nothing in this opinion prevents Appellants from pursuing their claims in state court.

**III.    Conclusion**

Based on the foregoing discussion, it is hereby

**ORDERED**, that the July 29, 2005 Memorandum-Decision and Order of the Bankruptcy Court is **AFFIRMED**; and it is further

**ORDERED**, that the August 24, 2005 oral decision, and the August 29, 2005 Decision and Order of the Bankruptcy Court are **AFFIRMED**, and it is further

**ORDERED**, that Appellants' appeals are **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

DATED:      January 16, 2007
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

13